**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

v.                                                                                          CIV No. _____

ROADRUNNER REDI-MIX, INC.,

        Defendant.

_____

**COMPLAINT AND JURY TRIAL DEMAND**
_____

**NATURE OF THE ACTION**

This action arises under Title I of the Americans with Disabilities Act of 1990, as amended and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Eliud "Chuck" Tafoya ("Mr. Tafoya"), who was adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("Plaintiff" or the "Commission") alleges that Roadrunner Redi-Mix, Inc. ("Defendant" or "Defendant Roadrunner") unlawfully discriminated against Mr. Tafoya, an otherwise qualified individual with a disability, because of his neck impairment, by failing to afford him a reasonable accommodation. The Commission further alleges that Defendant unlawfully discriminated against Mr. Tafoya when it wrongfully terminated him from his employment because of his disability and/or perceived disability.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is an agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3), 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Roadrunner Redi-Mix Inc., a New Mexico corporation, has continuously been doing business in the State of New Mexico, and had at least 15 employees.

5. At all relevant times, Defendant Roadrunner continuously was part of an integrated enterprise consisting of Defendant Roadrunner, Coyote Concrete Inc., ("Coyote Concrete"), Coyote Gravel Products ("Coyote Gravel"), and JPR Decorative Gravel, Inc. ("JPR Gravel"), doing business in the State of New Mexico.

      a. Anthony Villegas is the President for all four entities, Defendant Roadrunner, Coyote Gravel, JPR Gravel, and Coyote Concrete.

      b. Defendant Roadrunner, Coyote Concrete, Coyote Gravel, and JPR Gravel share employees on an as-needed basis.

      c. Defendant Roadrunner, Coyote Concrete, Coyote Gravel, and JPR Gravel share equipment on an as-needed basis.

      d. Julie Gutierrez is the owner of Roadrunner Redi-Mix, Inc. and is also identified as an officer of Coyote Gravel, JPR Gravel, and Coyote Concrete.

      e. Defendant Roadrunner and the Coyote Entities (Coyote Gravel and Coyote Concrete) use common advertising methods, such as advertising on shared equipment using common themes (Warner's Brother Roadrunner and Coyote cartoon emblems).

      f. Coyote Concrete, Coyote Gravel and JPR Gravel are all located at the same address, 2124 Coors Blvd., Albuquerque, NM 87121-5011.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## GENERAL ALLEGATIONS

7. More than thirty days prior to the institution of this lawsuit, Mr. Tafoya filed a charge of discrimination with the Commission alleging violations of Title I of the ADA by Defendant.

8. The Commission investigated Mr. Tafoya's charge of discrimination.

9. Based on evidence adduced during its investigation, the Commission issued a determination finding reasonable cause to believe Defendant had engaged in certain unlawful employment practices identified in the determination.

10. The Commission's determination letter included an invitation for Defendant to join the Commission in informal methods of conciliation in an attempt to eliminate the alleged unlawful employment practices.

11. As part of the conciliation process, the Commission provided Defendant a proposal detailing the kinds of relief the Commission felt was necessary to eliminate the alleged unlawful employment practices.

12. The Commission and Defendant were unable to reach an agreement in the conciliation process.

13. After the conciliation efforts were unsuccessful, the Commission sent notice to Defendant that conciliation had failed.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

15. Mr. Tafoya was employed by Defendant as a cement truck driver from January 1, 2007 to August 27, 2009.

16. In 1992, Mr. Tafoya underwent an Anterior Cervical Discectomy and Fusion to his C3 and C4 cervical discs in his neck.

17. Mr. Tafoya is limited in the range of motion in his neck, approximating only 60% of the normal range of motion.

18. Mr. Tafoya is also limited in the major life activities of bending, over-reaching, overhead lifting, turning the head in different directions, performing manual tasks, and musculoskeletal functions of the neck.

19. During the relevant time period, John Rey ("Supervisor Rey") was Tafoya's direct supervisor, and the General Manager was Terri Tafoya ("General Manager").

20. From January 1, 2007 until August 25, 2009, Mr. Tafoya safely performed the essential job functions of a driver.

21. On August 14, 2009, Defendant informed all drivers that they would have to use a jackhammer to remove the dried concrete left in the inside of the cement-mixer barrels, a process commonly known as "chipping the barrel."

22. Prior to August 2009, Defendant's drivers were not required to "chip the barrels" of their cement trucks.

23. After Mr. Tafoya learned he would be expected to "chip the barrel" of his truck, he informed Defendant about his neck impairment and prior neck surgery, because he was concerned about "chipping the barrel" without permission from his physician.

24. Chipping the barrel was not an essential job function of a cement driver.

25. Chipping the barrel was only performed on an as needed basis, not more often than once per year.

26. Defendant's written job description of the essential functions of a "Concrete Redi-Mix Driver" did not include chipping the barrel or jackhammering activities of any kind.

27. On August 24, 2009, Defendant sent Mr. Tafoya home without pay, and ordered him to provide medical documentation of his impairment.

28. On August 24, 2009, the General Manager ordered Mr. Tafoya to immediately obtain a medical appointment because his September 11, 2009 appointment was not soon enough.

29. In compliance with the General Manager's directive, Mr. Tafoya saw his physician on August 25, 2009.

30. On August 25, 2009, Mr. Tafoya's physician faxed medical documentation to Defendant stating "due to severe neck problems, Mr. Tafoya's work duties should be limited to driving and those not involving jack-hammering/overhead activities."

31. On August 26, 2009, Defendant requested additional medical information about Mr. Tafoya's limitations.

32. On August 26, 2009, Defendant received the requested medical form filled out by Mr. Tafoya's physician, Dr. Baca, indicating that Mr. Tafoya could perform all functions listed, except that he should not be "reaching above shoulders" more often than occasionally, defined as 1-33% of the time in an "applicable work day."

33. On August 27, 2009, Defendant terminated Mr. Tafoya's employment because he allegedly could not perform *any* overhead tasks.

34. At the time of Mr. Tafoya's termination from his employment, Mr. Tafoya could perform all essential job functions of a driver, without any reasonable accommodation.

35.  Defendant mistakenly believed that Mr. Tafoya could not perform any overhead activities, including but not limited to the following duties of a cement driver:

   a.  Raising arms to get in and out of the cab of the cement truck;

   b.  Lifting the hood of the cement truck to inspect the interior mechanics of the truck;

   c.  Lowering a ladder positioned at the back of the cement truck to inspect the opening of the cement barrel;

   d.  Climbing the ladder to inspect the opening of the cement barrel;

   e.  Lowering and releasing a chute in which concrete flows down;

   f.  Unfastening extension chutes located on the side of the concrete truck as deemed necessary;

36.  Defendant's mistaken belief that Mr. Tafoya was unable to perform the tasks outlined in 36(a) through (f) stemmed from Defendant's narrow interpretation of the medical form submitted by Dr. Baca on August 26, 2011.

37.  Defendant believed that Mr. Tafoya's neck impairment limited one or more of his major life activities, including but not limited to lifting, working, and/or performing *any* overhead activities.

38.  After receiving the medical from on August 26, 2011, Defendant had no communications with Dr. Baca about Mr. Tafoya's ability to perform certain overhead activities.

39.  Defendant never asked Mr. Tafoya or his doctor whether he was able to perform the overhead activities outlined in paragraph 36(a) through (f).

40. Since January 1, 2007, Charging Party was able to perform all the essential duties of a cement driver, including but not limited to the duties outlined in paragraph 36(a) through (f).

41. The only accommodation Mr. Tafoya required was to be excused from performing overhead jackhammering.

42. In mid-September 2009, Defendants hired contractors to clean the cement barrels with a high pressurized water system, instead of requiring the drivers to chip the barrel.

### FIRST CLAIM FOR RELIEF
[Failure to Accommodate – 42 U.S.C. §§ 12112(a), (b)(5)(A)]

43. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

44. Eliud Tafoya's neck injury is a physical impairment that limits one or more major life activities.

45. Mr. Tafoya was able, with or without reasonable accommodation, to perform the essential functions of a cement driver at Roadrunner Redi-Mix Inc.

46. Defendant was aware of Mr. Tafoya's disability.

47. Mr. Tafoya asked Defendant for a reasonable accommodation for overhead jackhammering activities or to be exempt from performing any overhead jackhammering activities.

48. Overhead jackhammering, only performed once per year, was not an essential job function of a cement driver.

49. Defendant failed and refused to provide any accommodation for Mr. Tafoya.

50. Defendant failed and refused to engage in good faith discussions with Mr. Tafoya concerning accommodation.

51. Defendant failed to provide Mr. Tafoya any reasonable accommodation, as required under Section 102(b) (5) (A) of the ADA. 42 U.S.C. § 12112(b) (5) (A).

52. Defendant's failure to provide Mr. Tafoya any reasonable accommodation was intentional.

53. Defendant's failure to provide Mr. Tafoya any reasonable accommodation was malicious and/or done with reckless indifference to Mr. Tafoya's federally protected rights.

54. The effect of the practices complained of in the foregoing paragraphs has been to deprive Eliud Tafoya of equal employment opportunities and otherwise adversely affect his status as an employee, because of his disability.

55. As a result of Defendant's failure to provide reasonable accommodation for his disability, Mr. Tafoya was deprived of equal employment opportunities; was deprived of wages and benefits; was subjected to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation; and was otherwise disadvantaged compared to his non-disabled coworkers.

## SECOND CLAIM FOR RELIEF
### [Unlawful Termination – 42 U.S.C. §§ 12112(a), 12112(b)(5)(B)]

56. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

57. Eliud Tafoya is actually disabled or regarded as disabled as defined in the ADA.

58. Defendant was aware of Mr. Tafoya's neck impairment.

59. Defendant terminated Mr. Tafoya because of his actual disability, or in the alternative because he was regarded as disabled.

60. Defendant mistakenly believed that because of Mr. Tafoya's neck injury, he was unable to perform the job duties of a cement driver, including but not limited to, the duties detailed in Paragraphs 36 (a) through (f) above.

61. Mr. Tafoya was qualified and able to perform the essential functions of a cement driver, with or without a reasonable accommodation.

62. Mr. Tafoya was qualified and able to perform all of the job duties detailed in paragraph 36 (a) through (f) above, with or without reasonable accommodation.

63. Defendant intentionally discharged Mr. Tafoya from his employment because of his disability, or because of the need to provide reasonable accommodation for his disability, or because Defendant regarded Mr. Tafoya as disabled and perceived him as unable to perform the essential functions of a cement driver, despite Mr. Tafoya's ability to perform these functions.

64. Defendant's discriminatory termination of Mr. Tafoya's employment was done with malice and reckless indifference to his federally protected rights.

65. The effect of the practices complained of in the foregoing paragraphs have been to deprive Mr. Tafoya of equal employment opportunities and otherwise adversely affect his status as an employee, because of his disability.

66. As a result of Defendant's discriminatory termination of his employment, Mr. Tafoya was deprived of equal employment opportunities; was deprived of wages and benefits; was subjected to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation; and was otherwise disadvantaged compared to his non-disabled workers.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Roadrunner Redi-Mix, Inc., its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against employees because of disability.

B. Grant a permanent injunction enjoining Defendant Roadrunner Redi-Mix, Inc., its officers, agents servants, employees, attorneys, and all persons in active concert or participation with it from retaliating against any individual or engaging in any activity to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of any right granted by the ADA.

C. Order Defendant Roadrunner Redi-Mix, Inc. to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant Roadrunner Redi-Mix, Inc. to make whole Eliud Tafoya by providing appropriate back pay and benefits with prejudgment interest, compensatory damages in amounts to be proved at trial, and other affirmative and equitable relief necessary to eradicate the effects of its unlawful employment practices, including reinstatement with all attendant rights and benefits, or front pay in lieu thereof.

E. Order Defendant Roadrunner Redi-Mix, Inc. to make whole Eliud Tafoya by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices above, including job search expenses and other pecuniary losses, in amounts to be determined at trial.

F.     Order Defendant Roadrunner Redi-Mix, Inc. to make whole Eliud Tafoya by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.     Order Defendant Roadrunner Redi-Mix, Inc. to pay Eliud Tafoya punitive damages for its malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

H.     Grant such further relief as the Court deems necessary and proper.

I.     Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

**Dated:  September 29, 2011.**

Respectfully Submitted,

P. DAVID LOPEZ
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M Street, N.E.
Washington, D.C.  20507

MARY JO O'NEILL
Regional Attorney
EEOC Phoenix District Office
3300 N. Central Avenue
Suite 690
Phoenix, Arizona 85012

                                    RITA BYRNES KITTLE
                                    Supervisory Trial Attorney
                                    EEOC Denver Field Office
                                    303 E. 17th Ave.
                                    Suite 410
                                    Denver Colorado 80203

By:    */s/ Christina A. Vigil*
                      CHRISTINA VIGIL
                      Trial Attorney
                      EEOC Albuquerque Area Office
                      505 Marquette NW, Suite 900
                      Albuquerque, New Mexico 87102
                      (505) 248-5231
                      christina.vigil@eeoc.gov

                      LORETTA MEDINA
                      Senior Trial Attorney

**PLEASE NOTE:**

**For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.**